UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| Plaintiff, : | |
| : | Civil No: 3:03cv1953(PCD) |
| vs. : | |
| : | |
| 74.05 ACRES OF LAND, SITUATED : | |
| ON THE WESTERLY SIDE OF : | |
| WOODCHUCK HILL ROAD IN THE : | |
| TOWN OF CANTON, CONNECTICUT, : | |
| : | |
| Defendant. : | |
| | |
| [CLAIMANTS: DALE C. MARTIN, : | |
| UPLANDS GROUP, LLC, AND : | |
| FYLER, INCORPORATED] : | |

**RULING ON PLAINTIFF'S MOTION TO DISMISS OR STRIKE THE CLAIM OF THE CANTON LAND CONSERVATION TRUST, INC**

Plaintiff, the United States of America, moves [Doc. No. 23] to dismiss or strike the Verified Claim/Statement of Interest or Right of Defendant, Canton Land Conservation Trust, Inc., for lack of standing. In addition, Plaintiff seeks to dismiss or strike the Trust's claim pursuant to the relation back doctrine. The Plaintiff's Motion is **granted** for the following reasons.

**I. BACKGROUND[1]**

Plaintiff, the United States of America, brought this civil in rem forfeiture action under 18 U.S.C. § 981(a)(1)(A) to forfeit real property which was involved in a transaction or attempted

---

[1] Unless otherwise noted, the following account is taken from Defendant's Verified Claim/Statement of Interest or Right and Answer. In considering Plaintiff's Motion to Dismiss, the facts in Defendant's Verified Claim/Statement of Interest or Right and Answer are assumed to be true. Manning v. Utlis. Mut. Ins. Co., Inc., 254 F.3d 387, 390 n.1 (2d Cir. 2001).

transaction in violation of 18 U.S.C. § 1956(a)(1)(A)(i).  Def.'s Ans. ¶ 1.  The Defendant property is 74.05 acres of land situated on the westerly side of Woodchuck Hill Road in the town of Canton, Connecticut ("Defendant property").  Id. ¶ 4.

On November 13, 1998, Uplands Group, LLC ("Uplands Group") acquired the Defendant property from Flyer Incorporated ("Flyer") for $444,300.00, via a Statutory Warranty Deed.  Id. ¶ 6.  Flyer's interest in the Defendant property is a Note in the original principal amount of $305,300.00, secured by a Mortgage Deed dated November 16, 1998.  Id. ¶ 7.

On July 31, 1999, Dale C. Martin, as principal member and sole shareholder of Uplands Group, entered into a Purchase and Sale Agreement with the Claimant, Canton Land Conservation Trust, whereby he agreed to convey title to the Defendant property as a gift on or before December 1, 1999. Pl.'s Mem. Supp. Mot. Dismiss at 9.  That date passed without a conveyance of title, but on November 8, 2002 the parties amended and re-executed the Agreement.  The amended terms provided that the Claimant would tender to Martin the outstanding balance owed on the Note to Flyer, plus any accrued but unpaid interest in exchange for title to the Defendant property.  Accordingly, the Claimant stood to pay Martin $101,767.00 for the outstanding balance, plus interest at 8.5% per annum from November 16, 2001 to November 16, 2003.  Id.  The closing date was to take place on or about November 16, 2003, but never occurred.  Id.

On September 5, 2003, Martin pled guilty to mail fraud, in violation of 18 U.S.C. § 1341, and investment adviser fraud, in violation of 15 U.S.C. §§ 80b-6(1) and 80b-17.  Def.'s Ans. ¶ 10.  Martin has admitted and an FBI investigation has confirmed that monies fraudulently obtained by Martin were used to purchase the Defendant property in violation of 18 U.S.C. §

981(a)(1)(A). Id. Thereafter, Martin entered into a Stipulated Forfeiture Agreement with the Plaintiff, whereby he agreed to forfeit the Defendant property to the Plaintiff. Id. In accordance with that Agreement, on November 13, 2003, the Plaintiff filed a Verified Complaint of Forfeiture, claiming that the forfeiture of the Defendant property is warranted by § 981(a)(1)(A).

## II. DISCUSSION

In its Verified Complaint of Forfeiture, Plaintiff alleges that: (1) pursuant to the plea agreement with the United States, Martin and Uplands Group have agreed to forfeit Defendant property and (2) Defendant property is real property which was used in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). In its Verified Claim/Statement of Interest or Right, the Claimant alleges that it has an interest in Defendant property via the Purchase and Sale Agreement dated July 31, 1999, as amended November 8, 2002. In addition, Claimant argues that it is an innocent owner and/or innocent interest-holder of Defendant property and therefore, its interest cannot be forfeited.

Plaintiff moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss or strike Claimant's Verified Claim/Statement of Interest or Right for lack of standing. Plaintiff also moves to dismiss or strike pursuant to the relation back doctrine.[2]

---

[2] Courts have stricken claims pursuant to Fed. R. Civ. P. 12(f) and dismissed claims to forfeited property for lack of standing pursuant to Fed. R. Civ. P. 12(b)(6). In actions such as the instant one, in which the claimants are akin to intervenor-defendants whose claims constitute defenses to the forfeiture actions, Fed. R. Civ. P. 12(f) "provides the proper procedural basis for the government's motion to strike the claims." United States v. $79,000 in Account Number 2168050/6749900 at Bank of New York, 1996 WL 648934, *2 (S.D.N.Y. Nov. 7, 1996) (citations omitted); see also Fed. R. Civ. P. 12(f) (providing that "upon motion made by a party before responding to a pleading . . . the court may order stricken from any pleading any insufficient defense . . ."). Substantively, it matters not which is applied here. Rule 12(f) and Rule 12(b)(6) involve the same standards of proof and evidence, so regardless of which is applied, the test involved and the outcome remain the same. See Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992).

**A. Standard of Review**

A motion to dismiss must be decided on the facts alleged in the complaint. Merritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001). All facts in the complaint are assumed to be true and are considered in the light most favorable to the non-movant. Manning v. Utlis. Mut. Ins. Co., Inc., 254 F.3d 387, 390 n.1 (2d Cir. 2001). A motion to dismiss is properly granted when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 69 (2d Cir. 2001) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)). "The function of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence which might be offered in support thereof." Ryder Energy Dist. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984) (internal quotation marks omitted). The Court "should not be swayed into granting the motion because the possibility of ultimate recovery is remote." Id.

**B. Standing**

Plaintiff argues that a claimant who asserts an interest in property subject to a civil forfeiture based solely upon his status as party to a purchase and sale agreement does not have title nor an ownership interest sufficient to give him standing to contest the forfeiture under both Article III and 18 U.S.C. § 983(d). In addition, Plaintiff argues, pursuant to Conn. Gen. Stat. § 47-33a, that any interest the Claimant had in Defendant property via the purchase and sale agreement was destroyed when it failed to commence an action to enforce the agreement within one year after the scheduled closing date.

The Claimant contends that under Connecticut law, the doctrine of equitable conversion

gave it, as purchaser of real property in an executory agreement, equitable title to the property. The Claimant maintains that this title is a sufficient ownership interest in the Defendant property to grant it standing under Article III and § 983(d) to contest the forfeiture. The Claimant also contends that by filing a Verified Claim/Statement of Interest or Right and an Answer and Affirmative Defenses to Plaintiff's Verified Complaint of Forfeiture, it commenced an action within the meaning of Conn. Gen. Stat. § 47-33a and thereby preserved its interest in the Defendant property.

In order to contest a civil forfeiture by the United States government, a claimant must first establish that it has standing under both Article III of the Constitution and under the statute governing its claim. United States v. Cambio Exacto, 166 F.3d 522, 526 (2d Cir. 1999). "If the claimant lacks standing, the court lacks jurisdiction to consider her challenge of the forfeiture." United States v. One 1986 Volvo 750 T, VIN XV1GX8748G1015250, 765 F.Supp. 90, 91 (S.D.N.Y. 1991).

  **1. Article III Standing**

Article III standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498, 45 L. Ed. 2d 343, 95 S.Ct. 2197 (1975). In a civil forfeiture case, the claimant contesting the forfeiture bears the burden of demonstrating he or she has standing. Mercado v. United States Customs Service, 873 F.2d 641, 644 (2d Cir. 1989). "'[T]he claimant need not prove the full merits of her underlying claim. All that needs to be shown is a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement.'" Torres v. $36,256.80 U.S. Currency, 25 F.3d 1154, 1158 (2d Cir. 1994) (quoting United States v. 116 Emerson St., 942 F.2d 74, 78 (1st Cir. 1991)). It is

widely held that a claimant has a facially colorable interest in the proceedings if he or she can show some ownership or possessory interest in the specific property to be forfeited. See Mercado, 873 F.2d at 644. A claimant can prove his or her interest by showing actual possession, dominion, control, title or financial stake in the subject property. United States v. Contents of Account Numbers 208-06070 and 208- 06068-1-2, 847 F.Supp. 329, 333 (S.D.N.Y. 1994). The Claimant does not contend that it has a possessory interest in the Defendant property, nor does it contend that it took actual possession or asserted any dominion or control over the Defendant property. Therefore, we are confined to the question whether, by virtue of an executory Purchase and Sale Agreement, it had a sufficient ownership interest in the Defendant property to grant it Article III standing. Ownership interests are defined by the law of the State in which the interest arose, United States v. 7725 Unity Ave., 294 F.3d 954, 956 (8th Cir. 2002), thus Connecticut law will determine the question of Article III standing.

      The Claimant argues, under the doctrine of equitable conversion, that it became owner of the Defendant property upon execution of the Purchase and Sale Agreement. See Def's. Mem. Opp. Pl's. Mot. Dismiss or Strike at 7. This Court agrees. Under Connecticut law, the owner of real estate is the person who has title to that property. See Warner v. Leslie-Elliot Constructors, Inc., 194 Conn. 129, 137, 479 A.2d 231 (1984) ("When we say, a man has the title to . . . [property], we mean, he is the owner of it; and vice versa."). The Connecticut Supreme Court has held that "under the doctrine of equitable conversion, the purchaser of land under an executory contract is regarded as the owner, subject to the vendor's lien for the unpaid purchase price, and the vendor holds the legal title in trust for the purchaser." Frances T. Zappone Co. v. Mark, 197 Conn. 264, 267, 497 A.2d 32 (1985) (internal quotations omitted). "[A] contract for

the sale of land vests equitable title in the vendee." Lana v. Greene, 175 Conn. 453, 461, 399 A.2d 837 (1978).

On July 31, 1999, the Claimant entered into the original Purchase and Sale Agreement with Dale C. Martin and on November 8, 2002 the parties amended and re-executed that Agreement. The terms of the amended Agreement called for the Claimant to pay the outstanding balance owing on the Note to Flyer plus any unpaid interest accrued from November 16, 2001 to November 16, 2003. The Claimant and Martin both signed the Agreement and the Claimant duly recorded it in the land records on March 6, 2003. The validity of the Agreement is not contested. Therefore, upon the execution and re-execution of the Agreement, equitable title passed to the Claimant and it became the owner of the Defendant property.

In its Reply Brief, Plaintiff contends that the doctrine of equitable conversion should be applied only in cases where a seller dies before property under an agreement was conveyed or where a building contractor retains a buyer's deposit. Pl's. Reply at 3. This Court disagrees. The doctrine of equitable conversion "is not a fixed rule of law, but proceeds on equitable principles that take into account the result to be accomplished." 27A AM. JUR. 2D *Equitable Conversion* § 1. Connecticut courts have consistently recognized that the doctrine of equitable conversion grants ownership to purchasers under executory contracts in varying factual situations that go beyond those mentioned by the Plaintiff. See e.g., Zappone, 197 Conn. at 267-68 (holding, pursuant to the doctrine of equitable conversion, that equitable title passed to the purchaser when the parties executed a valid bond for deed setting forth the parties' respective obligations); Lanna, 175 Conn. at 461 (holding, under the doctrine of equitable conversion, that an enforceable contract for the sale of property vested title in the purchaser sufficient to give

purchaser standing to challenge a lease on the property). Contrary to the Plaintiff's argument, the doctrine of equitable conversion may be appropriately applied whenever a purchaser seeks to establish an ownership interest in property subject to litigation and can prove the existence of a valid and enforceable sales agreement. Zappone, 197 Conn. at 268. The Claimant has established that it was a purchaser of land under a valid executory contract for the purchase of land, to wit the Purchase and Sale Agreement dated July 31, 1999, as amended November 8, 2002, and as such, it is the equitable owner of Defendant property under Connecticut law.

This ownership interest is sufficient to grant the Claimant standing under Article III. "An allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture." Torres, 25 F.3d at 1158. The Claimant's equitable ownership, by way of the Purchase and Sale Agreement, is a sufficient ownership interest to satisfy the "facially-colorable-interest" requirement for Article III standing. Accordingly, the Claimant has standing under Article III to contest the forfeiture action.

**2. Statutory Standing**

The Claimant must also show that it has statutory standing pursuant to 18 U.S.C. § 983(d)(1) to contest the civil forfeiture action.[3] To qualify as an "innocent owner" for purposes of § 983(d)(1), a claimant must prove that he has an ownership interest as defined in the statute. The relevant statute provides:

> (6) the term "owner"--
> (A) means a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest or valid assignment of an ownership interest; and

---

[3] Section 983(d)(1) states in relevant part: "An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute."

>    (B) does not include –
>    >  (i) a person with only a general unsecured interest in, or claim against, the property or estate of another;
>    >  (ii) a bailee unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized; or
>    >  (iii) a nominee who exercises no dominion or control over the property.

18 U.S.C. § 983(d)(6).

Although this issue is commonly considered as part of the standing inquiry, "it is in fact an element of the innocent owner's claim on the merits." One Lincoln Navigator 1998, 328 F.3d 1011, 1014 (8th Cir. 2003); United States v. Hooper, 229 F.3d 818, 820 n. 4 (9th Cir. 2000) (noting that when claimants have Article III standing but fail to prove an ownership interest that meets the statutory criteria, the "statement that claimants lacked standing is another way of saying that claimants had failed to establish on the merits a property interest entitling them to relief"). In other words, when a claimant seeks the protection of the innocent owner defense he or she must make a preliminary showing of his or her ownership interest defined by the statute under which it seeks relief before going forward.

Plaintiff argues that the statutory definition of "owner" in § 983(d)(6) does not include a recorded agreement to sell real estate. Pl.'s Mem. Supp. Mot. Dismiss at 7. According to Plaintiff, a person who asserts an interest in property based solely on his status as party to a purchase and sale agreement in which legal title has not passed cannot have standing under the innocent owner provision in § 983(d). Id. The Claimant, however, argues that since Connecticut law establishes it as the equitable owner of Defendant property, and such status falls within the statutory definition of § 983(d)(6), it has statutory standing pursuant to § 983(d)(1). Def.'s Mem. Supp. Obj. Pl's. Mot. Dismiss or Strike at 8.

It is well established that an executory contract for the sale of land does not convey legal title to the land. 77 AM. JUR. 2D *Vendor & Purchasers* § 313. Although the purchaser of land under an executory contract is regarded as the owner under Connecticut law pursuant to the doctrine of equitable conversion, it is the vendor who holds the legal title in trust for the purchaser. Zappone, 197 Conn. at 267. The parties' interests are equitable in nature; the vendor's interest is in the unpaid purchase price and is treated as personalty, Bowne v. Ide, 109 Conn. 307 (1929), whereas the purchaser's interest is in the land and is treated as realty. Cooper v. Polayes, 19 Conn. Sup. 353, 354-55, 113 A.2d 599 (1955). According to Plaintiff, the equitable interest the Claimant received via the Purchase and Sale Agreement is insufficient to qualify as an ownership interest under the innocent owner provision in § 981(d)(1) because only the legal title holder can assert the innocent owner defense.

A brief history of the innocent owner defense will guide this Court's decision. Prior to 2000, the innocent owner defense appeared in two separate forfeiture statutes, 21 U.S.C. § 881(a)(6), dealing with forfeiture of proceeds traceable to narcotics offenses, and 18 U.S.C. §981(a)(2), dealing with proceeds traceable to a host of other criminal violations. Both provisions exempted property from forfeiture to "the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." 21 U.S.C. § 881(a)(6); see also 18 U.S.C. § 981(a)(2) (containing the same provision with minor wording differences).

In Torres v. $36,256.80 U.S. Currency, 25 F.3d 1154, 1157 (2d Cir. 1994), the Second Circuit held that the standing analysis of a forfeiture case must include consideration of "whether the interest sought to be protected by the complaint is arguably within the zone of interests to be

protected or regulated by the statute or constitutional guarantee in question." (quoting Association of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970)). Examining the legislative history of the innocent owner provision in § 881(a)(6), the Torres Court found that Congress intended the provision to "be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized." Id. (quoting Joint Explanatory Statement of Titles II and III, 95th Cong., 2d Sess. (1978), reprinted in 1978 U.S.C.C.A.N. 9518, 9522). Ultimately, the Court held that an equitable interest recognized under state law was a sufficient ownership interest to grant a claimant standing as an innocent owner under § 881(a)(6). Id. at 1160. Subsequently, the Second Circuit held that the Torres reasoning also applied to the innocent owner provision in § 981(a)(2). United States v. Funds Held in the Name or for the Benefit of Wetterer, 210 F.3d 96, 109 (2d Cir. 2000). Thus, under either statute, the innocent owner defense was interpreted broadly to protect persons with either a legal or equitable interest in the property to be forfeited.

Subsequently, however, Congress passed the Civil Asset Forfeiture Reform Act ("CAFRA"), Pub.L. 106-185, 114 Stat. 202 (2000), which consolidated and amended the procedures for civil judicial forfeiture proceedings. United States v. $557,933.89, More or Less, in United States Funds, 287 F.3d 66, 76 at n.5 (2d Cir. 2002). The Act consolidated the former innocent owner defenses into one new provision, 18 U.S.C. § 983(d), which clarified the definition of an innocent owner and provided a precise definition of the term "owner." See 18 U.S.C. § 983(d)(6). "A review of the legislative history indicates that Congress, in enacting CAFRA, sought to advance three broad policies." Ramirez v. United States, 57 Fed.Cl. 240, 250 (Ct. Fed. Cl. 2003). First, Congress intended CAFRA "to increase the due process safeguards for

11

property owners whose property has been seized." Id. (quoting H.R.Rep. No. 106-192 at 2 (1999)). Second, Congress sought to standardize the federal civil forfeiture procedures. Id. (citing Civil Asset Forfeiture Reform Act of 2000, Pub.L. 106-185, 114 Stat. 202 (2000) ("An Act to provide a more just and uniform procedure for Federal civil forfeitures, and for other purposes.")); 145 Cong. Rec. 4860 (daily ed. June 24, 1999) (statement of Rep. Graham) ("CARFA brings uniformity across the board in civil asset forfeiture statutes under the Federal law."). Finally, with CAFRA, Congress sought to "preserve the civil forfeiture powers of the federal law enforcement agencies" as they previously existed. Id. at 251 (citing 146 Cong. Rec. S1762 (daily ed. March 27, 2000) (statement of Sen. Sessions) ("[CAFRA] would provide enhanced protections to private property owners and at the same time would not undermine . . . the ability of law enforcement agencies to seize and forfeit . . . assets.")). Stated broadly, Congress intended the reforms in CAFRA to operate in a way that "increases protections for property owners, while respecting the interests of law enforcement." Id. (citing 146 Cong. Rec. S1759 (daily ed. March 27, 2000) (statement of Sen. Hatch) ("[CAFRA] is a balance between property rights and law enforcement.")).

In light of CAFRA's history and underlying policies, it is clear that while Congress intended the innocent owner defense to continue to protect innocent property owners from forfeiture, it is equally as clear that Congress did not intend the defense to prevent the federal government from being able to exercise its forfeiture powers at all. To achieve this balance, Congress eliminated the defenses available under §§ 881(a)(6) and 981(a)(2), codified the new defense in § 983(d), and narrowed the class of persons to which the defense is available by specifically stating who is included in the term "owner" in § 983(d)(6)(A) and who is excluded

from that classification in § 983(d)(6)(B).  As a result, Congress foreclosed any possibility of giving the innocent owner defense a broad application.  These changes compel the conclusion that Congress intended the defense to apply only to those persons that fit within the definition of "owner" in §§ 983(d)(6)(A) and (B).

Nowhere in § 983(d)(6) is there mention of an equitable interest in the property to be forfeited, nor is there any mention of an interest by way of a recorded purchase and sale agreement.  While § 983(d)(6)(A) is not limited in its list of what would constitute an owner, it does not include one with an equitable interest and § 983(d)(6)(B) specifies what is not included in the term owner.  One with an asserted equitable interest can properly be regarded as having "only a general unsecured interest in, or claim against, the property" and is specified as not an owner.  18 U.S.C. § 983(d)(6)(B).  In light of the statutory language and Congress's clear intent to narrow the interpretation of the innocent owner defense, this court concludes that an equitable interest in property is not a sufficient ownership interest to grant a claimant statutory standing as an innocent owner.  Accordingly, the Claimant does not meet the definition of "owner" under § 983(d)(6) and therefore does not have statutory standing as an innocent owner.

The Claimant argues in the alternative that it has a purchaser's lien on the Defendant property under Conn. Gen. Stat. § 49-92a and therefore has standing under § 983(d)(6) as a lien holder.  The Plaintiff contends that the Claimant does not have a purchaser's lien because it did not tender a deposit to Martin and the Purchase and Sale Agreement did not contain the witnessed and acknowledged signatures required under §49-92a.  The Claimant's alternative argument is without merit.

The language of § 49-92a is clear that a purchaser's lien is only created in the amount of

the deposit tendered by the purchaser pursuant to and stated in a contract for the conveyance of land.[4] Neither the Purchase and Sale Agreement nor the Amendment to and Re-Execution of the Agreement required the Claimant to tender any such deposit and none was tendered. Therefore, no purchaser's lien was created. Furthermore, according to Goebel v. Glover, 91 Conn. App. 446, 881 A.2d 493 (Conn. App. 2005), § 49-92a does not recognize a purchaser's lien where the contract for the sale of land was not witnessed and acknowledged. A requirement that a contract be witnessed and acknowledged requires the signatures of one or more witnesses and a signature by a Notary Public. The Purchase and Sale Agreement and the Amendment to and Re-Execution of the Purchase and Sale Agreement do not contain the requisite witnessed and acknowledged signatures. Thus, a purchaser's lien was not created under Conn. Gen. Stat. § 49-92a. Under either theory, the Claimant does not have a purchaser's lien on the defendant property and cannot have standing under § 983(d)(6) as a lien holder. Accordingly, the Claimant does not have statutory standing to contest the forfeiture.

### 3. Connecticut General Statute § 47-33a

Even if the Claimant had statutory standing, its claim would nevertheless be time-barred by Conn. Gen. Stat. § 47-33a(a). Plaintiff argues, pursuant to Conn. Gen. Stat. § 47-33a, that whatever interest the Claimant may have had by virtue of the Purchase and Sale Agreement expired when it failed to bring an action to enforce the agreement within one year from the November 16, 2003 closing date. Conn. Gen. Stat. § 47-33a provides, in relevant part:

---

[4] Conn. Gen. Stat. § 49-92a provides in relevant part: "A purchaser's lien is created for the amount of the deposit paid pursuant to and stated in a contract for the conveyance of land by the recording of such contract, or a notice thereof, in the records of the town in which the land is situated, provided the contract, or notice thereof, is executed by the owner and by the vendee of the land, witnessed and acknowledged in the same manner as required for a deed for the conveyance of land . . ."

> (a) No interest in real property existing under an executory agreement for the sale of real property . . . shall survive longer than one year after the date provided in the agreement for the performance of it . . . unless the interest is extended as provided herein or unless action is commenced within the period to enforce the agreement.
> . . .
> ( c) Nothing in this section shall be construed to limit or deny any legal or equitable rights a party may have under the agreement except the right to have the agreement specifically enforced.

Pursuant to the statute, since the Agreement provided for a closing date of November 16, 2003, the Claimant had to commence an action to enforce the agreement on or before November 16, 2004 in order to preserve its interest in the Defendant property.  The Plaintiff contends that since the Claimant did not bring an action against Martin or Uplands Group within the one-year period, its interest has expired and § 47-33a(c) prevents it from attempting to specifically enforce the agreement, including contesting the forfeiture.  The Claimant, on the other hand, maintains that by filing a Verified Claim and Answer to Plaintiff's Verified Complaint of Forfeiture on January 8, 2004, it did commence an action within the meaning of § 47-33a(a).

The statutory language of § 47-33a(a) is clear that the Claimant had to commence an action to enforce the agreement within the one year time period in order to preserve its interest in Defendant property.  The filing of the Verified Claim/Statement of Interest or Right and Answer and Affirmative Defenses, although within the one-year period, was merely an assertion of the Claimant's interest in the Defendant property in an attempt to prevent forfeiture to the Plaintiff.  If the Claimant did not need to commence an action to enforce the agreement and could merely file a Verified Claim, then the limitations period and the statutory language of § 47-33a(a) would be meaningless.  The purpose of the limitations period is to bring disputes over land to a relatively quick resolution.  The filing of a Verified Claim does not facilitate a quick resolution, and in most cases would complicate the matter so as to actually hinder any resolution.

Section 47-33a(a) provides another way in which the Claimant could have preserved its interest. It could extended its Agreement with Martin under § 47-33a(b) by re-executing the Agreement or by executing a new agreement. As the Claimant already re-executed the original Agreement with Martin, this Court must presume that the Claimant knew the importance of re-executing the Agreement and what effect it had on the Claimant's interest in Defendant property. The Claimant cannot now attempt to avoid its failure to preserve its interest by arguing that its noncompliance with the law should be excused. Whether Martin had the ability to re-execute the Agreement after he agreed to the Stipulated Forfeiture with the Plaintiff is an issue this Court need not decide. The Claimant did not re-execute the Purchase and Sale Agreement, nor did it commence an action to enforce the agreement within the statutorily prescribed one year time period. Accordingly, the Claimant's interest in the Defendant property has expired and its claim to the property is time-barred under § 47-33a(a).

### C. Relation Back Doctrine

Since the Court finds that the Claimant lacks statutory standing and is time-barred from asserting any claim to the Defendant property, it need not address whether the relation back doctrine would bar the Claimant from contesting the forfeiture.

### III. CONCLUSION

Plaintiff's motion to dismiss or strike [Doc. No. 23] is **granted**. Canton Land Conservation Trust, Inc.'s claim is hereby dismissed.

SO ORDERED.

Dated at New Haven, Connecticut, February  9 , 2006.

/s/

                                        Peter C. Dorsey, U.S. District Judge
                                                     District of Connecticut